UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SIERRA N. CASTLE,

       Plaintiff,

   v.

COBB COUNTY, GEORGIA, et al.,

       Defendants.

CIVIL ACTION NO.
1:19-CV-01406-JPB

## ORDER

This matter comes before the Court on two motions:  (1) Cobb County;

Sheriff Craig D. Owens, Sr., in his official capacity;[1] former Sheriff Neil Warren in

his individual capacity; and former Cobb County Sheriff's Office ("CCSO")

employee Janet Prince and current CCSO employee David Sanders' (collectively,

"Defendants") Motion to Dismiss the Rehabilitation Act Claim Against the Cobb

County Sheriff in Count V and for Entry of Final Judgment as to All Defendants

[Doc. 49] and (2) Sierra N. Castle's ("Plaintiff") Motion for Leave to Amend

Complaint to Add Parties [Doc. 51].  This Court finds as follows:

---

[1] Plaintiff named former Cobb County Sheriff Neil Warren in his individual and official capacities as a defendant in this action.  Because Warren no longer holds that position, the current Sheriff, Craig D. Owens, Sr., is substituted for Warren as to the official capacity claim pursuant to Federal Rule of Civil Procedure 25(d).  For the sake of clarity, the Court will nonetheless refer to "Sheriff Warren" throughout this Order.

## PROCEDURAL HISTORY

This case arises from Plaintiff's March 28, 2018 detention at the Cobb County Adult Detention Center ("CCADC").  Plaintiff is a transgender woman who suffers from gender dysphoria; she claims that CCSO employees, including the named Defendants and others, subjected her to harassment and other forms of abuse—including misgendering her and making sexually offensive and threatening remarks—during her detention.[2]  On March 28, 2019, Plaintiff filed this action against Cobb County, Sheriff Neil Warren in his official and individual capacities, Janet Prince and David Sanders and against four unnamed defendants (the "Doe Defendants").  [Doc. 1].  Plaintiff brought the following claims:

- Count I, 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment to the United States Constitution on a theory of deliberate indifference, against all Doe Defendants;
- Count II, § 1983 claim for violation of the Fourteenth Amendment on a theory of supervisory liability, against three Doe Defendants;
- Count III, failure to hire, train and supervise staff in violation of the Fourteenth Amendment, against Sheriff Warren in his individual capacity, Prince and Sanders;
- Count IV, intentional infliction of emotional distress under Georgia law, against one Doe Defendant; and
- Count V, disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act

---

[2] The Court's February 20, 2020 Order sets forth the facts of this case in greater detail; those facts are incorporated here by reference.  See [Doc. 32, pp. 2–6].

("RA"), against Cobb County and Sheriff Warren in his official capacity.

Because Defendants' Motion pertains to Count V, the Court will discuss it in greater detail.  In that count, Plaintiff alleges that she "is properly considered a person with a disability as she has Gender Dysphoria" and should thus be considered a covered individual under the ADA and RA.  [Doc. 1, p. 41].  Plaintiff argues further that if the ADA's exclusion[3] of "gender identity disorders" applies categorically to all gender dysphoria diagnoses, that provision would be unconstitutional as violative of the Fourteenth Amendment.

Cobb County, Sheriff Warren, Prince and Sanders moved to dismiss Plaintiff's Complaint on June 7, 2019 (the "first motion to dismiss").  [Doc. 20].  On February 20, 2020, the Court granted in part the first motion to dismiss.  [Doc. 32].  A brief review of the Court's February 20, 2020 Order is appropriate.  First, the Court dismissed those claims brought against Doe Defendants (Counts I, II and IV), concluding that fictitious party pleading was not appropriate in this case.

---

[3] Both the ADA and the RA exclude from coverage, among other listed conditions, "transsexualism" and "gender identity disorders not resulting from physical impairments."  See 42 U.S.C. § 12211(b)(1) (ADA provision); 29 U.S.C. § 705(20)(F)(i) (identical RA provision).  However, in the Complaint, Plaintiff challenged the constitutionality of *only* the ADA's exclusion of "gender identity disorders"; Plaintiff made no reference to the (albeit identical) exclusion under the RA.  See [Doc. 1, pp. 41–42].

However, the dismissal was without prejudice for Plaintiff to refile those claims after properly identifying the Doe Defendants.  Second, the Court dismissed Count III on the grounds that Plaintiff failed to state a claim for supervisory liability under the Fourteenth Amendment.  Third, as to Count V, the Court dismissed the ADA and RA claims brought against Cobb County and dismissed the ADA claim against Sheriff Warren in his official capacity on the basis of Eleventh Amendment immunity.  Finally, the Court determined that because Plaintiff's allegations about her gender identity aligned with the definition of "transsexualism"—which is excluded from the RA—she could not maintain an RA claim against Sheriff Warren in his official capacity.  However, the Court did not dismiss that claim. Although Plaintiff raised a constitutional challenge in the Complaint, Plaintiff failed to follow the proper process, under Federal Rule of Civil Procedure 5.1, for challenging the constitutionality of a federal statute.  The Court thus instructed Plaintiff to comply with Rule 5.1 and reserved ruling on Count V pending a determination of the constitutionality of the RA's "transsexualism" exclusion.[4] The RA claim against Sheriff Warren in his official capacity is therefore the sole remaining claim in this case.

---

[4] In light of this finding, the Court declined to address the application of the RA's exclusion for "gender identity disorders."  See [Doc. 32, p. 34 n. 9].

On February 27, 2020, Plaintiff filed a Notice of Constitutional Question pursuant to Rule 5.1(a).  [Doc. 33].  Although the Court's February 20, 2020 Order reserved ruling on Plaintiff's RA claim pending a determination of the constitutionality of the RA "transsexualism" exclusion, Plaintiff's Notice asserted a constitutional challenge to exclusions under the ADA.  See id. at 1 ("To the extent that 42 U.S.C. § 12211(b)(1) of the ADA is read to exclude Gender Dysphoria, Plaintiff challenges the constitutionality of the provision.").  Nevertheless, in an abundance of caution, the Court certified Plaintiff's constitutional challenge to the United States Attorney General on September 15, 2021.  [Doc. 46].  On November 12, 2021, the United States responded and declined to intervene.  [Doc. 48].

Defendants filed a Motion to Dismiss on January 10, 2022, seeking dismissal of the final claim:  Count V, the RA claim brought against Sheriff Warren in his official capacity.  [Doc. 49].  On February 7, 2022, Plaintiff filed a Motion for Leave to Amend Complaint and to Add Parties ("Motion to Amend").  [Doc. 51].  Plaintiff seeks to add Sergeant Amanda Gunn and Sergeant Carrie Brown as defendants in two § 1983 claims:  one for deliberate indifference and one

for supervisory liability, both under the Fourteenth Amendment.[5]  The Court will discuss the Motion to Amend and the Motion to Dismiss in turn.

## MOTION TO AMEND

**A.    Legal Standard**

Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under Rule 15, a trial court should not deny leave to amend "without any justifying reason."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Justifying reasons to deny an amendment include:  "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing Foman, 371 U.S. at 182).

**B.    Analysis**

Plaintiff seeks leave to amend the Complaint to replace two previous Doe Defendants with named parties and to remove counts that the Court dismissed for

---

[5] These claims were Counts I and II in the original Complaint, which, as noted, the Court dismissed without prejudice to refile against properly named parties.

6

substantive reasons.  The proposed amended complaint includes the following

claims:

- Count I, § 1983 claim for violation of the Fourteenth Amendment on a theory of deliberate indifference, against Sergeant Carrie Brown and Sergeant Amanda Gunn;
- Count II, § 1983 claim for violation of the Fourteenth Amendment on a theory of supervisory liability, against Gunn and Brown;
- Count III, intentional infliction of emotional distress;[6] and
- Count IV, disability discrimination in violation of the RA, against Sheriff Warren in his official capacity.

See [Doc. 51-1].  Defendants oppose Plaintiff's Motion and urge the Court to deny

leave to amend on the grounds that Plaintiff's proposed amendment would be

futile.  Specifically, Defendants argue that the § 1983 claims, for which Plaintiff

seeks to add new defendants, are barred by the statute of limitations and do not

"relate back" to the original Complaint under the terms of Rule 15(c)(1).  The

Court will address these arguments below.

---

[6] In the proposed amendment, Plaintiff "reserves" Count III.  [Doc. 51-1, p. 33].  The original Complaint brought a claim for intentional infliction of emotional distress against "C.O. John Doe."  [Doc. 1, p. 37].  The proposed amended complaint asks the Court for leave to amend once again if Plaintiff identifies C.O. John Doe.  [Doc. 51-1, p. 38]. Presumably, then, Plaintiff reserves Count III pending the filing of a second amended complaint in which she properly identifies C.O. John Doe.

1.      *Statute of Limitations*

The statute of limitations for § 1983 claims "is that which the State provides for personal-injury torts."  <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Georgia provides a two-year statute of limitations for personal injury claims.[7]  <u>See</u> O.C.G.A. § 9-3-33.  This two-year statute of limitations for § 1983 claims "begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant."  <u>Jones v. Union City</u>, 450 F. App'x 807, 809 (11th Cir. 2011).

The events at issue in this case occurred between March 28 and March 29, 2018, the dates that Plaintiff was detained at and subsequently released from the CCADC.  Plaintiff's § 1983 claims arise from these events, and in the proposed amended complaint, Plaintiff alleges specifically that Gunn and Brown engaged in the conduct at issue on March 28 and March 29, 2018.  <u>See</u> [Doc. 51-1, p. 26] ("On March 28 through March 29, 2018, [Gunn and Brown] were acting under color of

---

[7] The Georgia Supreme Court tolled the statute of limitations for all civil cases on March 14, 2020, in light of the COVID-19 pandemic.  <u>See</u> Order Declaring Statewide Judicial Emergency (Ga. Mar. 14, 2020).  The Georgia Supreme Court then restarted the statute of limitations on July 14, 2020.  <u>See</u> Fourth Order Extending Declaration of Statewide Judicial Emergency (Ga. July 10, 2020).  On that date, then, litigants had whatever amount of time remained as of March 14, 2020, under the applicable statute of limitations.  <u>See id.</u> at 3–4 ("In cases that were pending before the March 14 Order, litigants will have the same amount of time to file or act after July 14 that they had as of March 14.").

state law . . . when they designated Plaintiff, a transgender female, as male and assigned her to male facilities.").  Accordingly, the statute of limitations for Plaintiff's § 1983 claims began to run—at the latest—on March 29, 2018.  <u>Brown v. Ga. Bd. of Pardons & Paroles</u>, 335 F.3d 1259, 1261 (11th Cir. 2003) ("[T]he statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for [her] rights.'" (quoting <u>Rozar v. Mullis</u>, 85 F.3d 556, 561–62 (11th Cir. 1996))).  Ordinarily, the statute of limitations on Plaintiff's § 1983 claims would have expired after two years, on March 29, 2020.  However, because the time period was tolled, <u>see</u> <u>supra</u> note 7, the statute of limitations expired on July 29, 2020, well before the filing of Plaintiff's proposed amendment.[8]

### 2.   *Relation Back*

Plaintiff now seeks to add parties to the § 1983 claims despite the expiration of the statute of limitations.  That the statute of limitations has expired is not immediately dispositive of Plaintiff's Motion to Amend, though.  Rule 15 allows an amendment to relate back to the date of the original pleading in certain

---

[8] As of March 14, 2020, when the statute of limitations was tolled, Plaintiff had fifteen days remaining before it was set to expire on March 29, 2020.  Therefore, when the statute of limitations began to accrue again on July 14, 2020, Plaintiff had fifteen days from that date before the statute of limitations on her claim expired.

circumstances.  Under Rule 15(c)(1)(A), an amendment relates back if "the law

that provides the applicable statute of limitations allows relation back."[9]

Alternatively, if "the amendment changes the party or the naming of the party

against whom a claim is asserted," the amendment relates back if the claim arose

from the conduct described in the original pleading *and*

> if, within the period provided by Rule 4(m) for serving the summons
> and complaint, the party to be brought in by amendment:
>   i.     received such notice of the action that it will not be
>          prejudiced in defending on the merits; and
>   ii.    knew or should have known that the action would have
>          been brought against it, but for a mistake concerning the
>          proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  In turn, Rule 4(m) provides a ninety-day period for

service.  Defendants argue that Plaintiff cannot show that her claims relate back

under either Rule 15(c)(1)(A) or Rule 15(c)(1)(C).

> i.     *Rule 15(c)(1)(A):  Relation Back under Georgia Law*

Applying Rule 15(c)(1)(A) requires a determination of whether Georgia law

permits relation back in the circumstances at issue.  Presnell v. Paulding Cnty., 454

F. App'x 763, 767 (11th Cir. 2011).  Helpfully, "Georgia's law governing relation

back is very similar to [Rule 15(c)(1)]."  Id.  When an amendment changes the

named parties in an action, the claims in the amended pleading must arise from the

---

[9] Georgia law provides the applicable statute of limitations in this case.

same conduct described in the original pleading to properly relate back.[10]

O.C.G.A. § 9-11-15(c).  In addition to this requirement,

> [a]n amendment changing the party against whom a claim is asserted
> relates back to the date of the original pleadings . . . if within the
> period provided by law for commencing the action against [her,] the
> party to be brought in by amendment (1) has received such notice of
> the institution of the action that [s]he will not be prejudiced in
> maintaining [her] defense on the merits, and (2) knew or should have
> known that, but for a mistake concerning the identity of the proper
> party, the action would have been brought against [her].

Id.

Plaintiff does not argue that Gunn and Brown received notice of this action

such that they would not be prejudiced in their defense or that they knew or should

have known that the action would be brought against them but for a mistake.

Instead, Plaintiff claims that because the Court's February 20, 2020 Order

permitted Plaintiff to refile certain claims against properly identified parties,

"Defendants were on notice of the possibility that [Plaintiff] would seek to file an

amended pleading" and, consequently, that Defendants would not be prejudiced by

an amendment.  [Doc. 51, p. 5].  Plaintiff's argument misapprehends the standard.

The *named* Defendants may have been on notice that Plaintiff would *amend* her

---

[10] Here, the proposed amendment adds no new claims; instead, it would simply add
named parties where claims were previously brought against unnamed defendants.
Accordingly, the proposed amended complaint satisfies this requirement for relation back
under Georgia law.

pleading, but this does not mean that *Gunn and Brown* were on notice of the *original action*.  Yet the latter issue is the relevant inquiry, and Plaintiff made no allegations about whether Gunn and Brown had notice of this case.  In fact, Defendants provided declarations from both Gunn and Brown in which they attested that they did not learn of this lawsuit or of Plaintiff's desired amendment until February 8, 2022, when their supervisor informed them of the matter.  See [Doc. 54-1, p. 3]; [Doc. 54-2, p. 3].  Gunn averred that she had "no memory of [Plaintiff] or of any of the events at issue in [Plaintiff's] lawsuit," [Doc. 54-1, p. 3], and Brown similarly asserted that she "never met [Plaintiff] and did not interact with her on March 28–29, 2018," [Doc. 54-2, p. 3].  Plaintiff has not shown that Gunn and Brown received sufficient notice of the lawsuit at all, let alone prior to the expiration of the statute of limitations on July 29, 2020.  However, the proposed defendant must have received notice of the action before the statute of limitations expires.  Oconee Cnty. v. Cannon, 854 S.E.2d 531, 536 (Ga. 2021).  Therefore, the § 1983 claims in Plaintiff's proposed amendment do not relate back under Georgia law.

ii.      *Rule 15(c)(1)(C):  Sufficient Notice for Relation Back*

Although Plaintiff's claims do not relate back under Georgia law, she may alternatively show relation back by meeting the requirements of Rule 15(c)(1)(C).

The foregoing analysis as to relation back under Georgia law is informative for whether Plaintiff's claims relate back under this rule, as the relevant inquiries are nearly identical.[11]  Under Rule 15(c)(1)(C), when the proposed amendment changes or names a party against whom a claim is asserted, that party must have either—within ninety days of the original pleading—received notice of the action *or* known or should have known that the action was forthcoming but for a mistake in the identity of the proper party.  As the Court described above, Plaintiff did not show that Gunn and Brown knew of this action at all, let alone within ninety days of its institution, or that they would have known but for a mistake.  Therefore, the proposed amendment cannot relate back under Rule 15(c)(1)(C).  Because the proposed amendment does not relate back under Rule 15, the statute of limitations—which expired on July 29, 2020—precludes Plaintiff's claims against Gunn and Brown.

Denying leave to amend on futility grounds is justified "'when the complaint as amended is still subject to dismissal.'"  <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d

---

[11] The first requirement of Rule 15(c)(1)(C) is that "Rule 15(c)(1)(B) is satisfied."  Fed. R. Civ. P. 15(c)(1)(C).  Rule 15(c)(1)(B), in turn, requires that the amendment "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Plaintiff's proposed amendment relies on the same facts presented in the original pleading, thus satisfying Rule 15(c)(1)(C)'s first component.

1255, 1263 (11th Cir. 2004) (quoting <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1320 (11th Cir. 1999)).  Counts I and II are due to be dismissed as time-barred.[12]  The Court thus finds that Plaintiff's proposed amendment would be futile.  <u>See</u> <u>Presnell</u>, 454 F. App'x at 768 ("[A]s the claims against the new parties would have been barred by the statute of limitations, . . . the amendment was futile.").  Plaintiff's Motion to Amend is **DENIED**.

## MOTION TO DISMISS

### A.    Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  As to the sufficiency of a complaint, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

---

[12] The Court need not address the "reserved" Count III, and Count IV adds no new allegations that require consideration by the Court.

Twombly, 550 U.S. 544, 555 (2007)).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

## B.  Analysis

Defendants seek dismissal of the RA claim against Sheriff Warren in his official capacity.  Defendants argue that Plaintiff failed to state a claim under the RA and contend that the Court should address the substance of Plaintiff's claim before ruling on the constitutional issue (i.e., whether the RA's exclusions violate the Fourteenth Amendment).  Accordingly, the Court will observe the "fundamental and longstanding principle of judicial restraint" that requires courts to "avoid reaching constitutional questions in advance of the necessity of deciding them."[13]  Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988).  The Court thus assumes—without deciding—that Plaintiff's RA claim is not barred by the statute's exclusions and will consider whether she alleged sufficient facts to state a claim in the first instance.[14]

---

[13] The Court agrees with this approach both as a matter of "judicial restraint" and because it avoids the issue of whether Plaintiff provided sufficient notice of a constitutional challenge to the RA.  As discussed earlier, Plaintiff's constitutional notice addressed the ADA only, but the only remaining claim is under the RA.

[14] In the first motion to dismiss, Defendants argued that Plaintiff's RA claim should be dismissed because the statute's "transsexualism" exclusion barred her claim.  See [Doc. 49-1, p. 12].  Therefore, in the February 20, 2020 Order, the Court decided Plaintiff's

To state a claim for compensatory damages under the RA, "a plaintiff must show that a defendant violated [her] rights under the statute[] and did so with discriminatory intent." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1147 (11th Cir. 2014).  In turn, establishing discriminatory intent requires a plaintiff to show that the defendant acted with "deliberate indifference." Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 348 (11th Cir. 2012).  A defendant acts with this deliberate indifference if he "'*knew* that harm to a federally protected right was substantially likely' and '*failed* to act on that likelihood.'" McCullum, 768 F.3d at 1147 (quoting Liese, 701 F.3d at 344).  As the name suggests, deliberate indifference entails a "deliberate choice." Liese, 701 F.3d at 344 (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276 (2d Cir. 2009)).  The Eleventh Circuit Court of Appeals describes the deliberate indifference requirement as an "exacting standard." Id. (quoting Doe v. Sch. Bd. of Broward Cnty., 604 F.3d 1248, 1259 (11th Cir. 2010)).

Importantly, *who* acted with the requisite indifference matters for an RA claim.  To hold a government entity liable under the RA, a plaintiff must show that a government "official" had actual knowledge of discrimination within the entity's

_____

claim on that ground alone and did not discuss whether Plaintiff's factual allegations otherwise stated a claim to relief.

programs and failed to adequately respond.  Silberman v. Mia. Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019).  At a minimum, the official must have possessed both "'authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf'" and "actual knowledge of discrimination in the [entity's] programs."  Id. (alterations in original) (quoting Liese, 701 F.3d at 349). As such, "an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process."  Liese, 701 F.3d at 350 (quoting Doe, 604 F.3d at 1257). This "key decision point" is one "where the decision is not ordinarily subject to a higher-level review."  P.M. by & through Martine v. City of Winfield, No. 6:19-CV-00623, 2020 WL 10181570, at *6 (N.D. Ala. June 10, 2020).  The purpose of this rule is to "ensure that an entity is only liable for the deliberate indifference of someone whose actions can fairly be said to represent the actions of the organization."  Liese, 701 F.3d at 350.

Because Plaintiff brings the RA claim against Sheriff Warren in his official capacity,[15] she must show that an official within the CCSO with substantial

[15] Official-capacity claims against individuals are tantamount to claims against the entity for which the individual is an agent.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an

supervisory authority intentionally discriminated against her; that is, that an official knew that harm to a federal right was substantially likely but nonetheless failed to act on that knowledge.  Plaintiff did not make this showing.

The Complaint sets forth the following allegations relevant to Plaintiff's discrimination claim:  C.O. John Doe and Sergeant Jane Doe categorized Plaintiff as male; both C.O. Doe and Sergeant Doe assigned Plaintiff to male facilities; C.O. Doe referred to Plaintiff using male pronouns rather than female pronouns; Sergeant Doe referred to Plaintiff as male within earshot of male inmates; and C.O. Doe conducted a pat-down of Plaintiff, even though his gender differed from hers. [Doc. 1, pp. 13–15].  Notably, all of the instances of discriminatory conduct alleged in the Complaint are attributable only to unnamed defendants. Nonetheless, to withstand a motion to dismiss, Plaintiff must plead facts showing that C.O. Doe and Sergeant Doe possessed the requisite authority to be considered "officials" for the purposes of RA liability.  More specifically, the factual allegations must evince the "key ingredients" under Liese:  "the action (or inaction) of an individual with 'substantial supervisory authority' within [CCSO's] 'chain of command' who knows that discrimination has taken place and is in a

_____

action against an entity of which an officer is an agent.'" (quoting Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978))).

position to do something about it." Silberman, 972 F.3d at 1136 (quoting Liese, 701 F.3d at 350).

As to C.O. Doe, Plaintiff alleges that he was "employed as a corrections officer at the [CCADC]." [Doc. 1, p. 5]. Without more, the Court cannot conclude that a corrections officer such as C.O. Doe has substantial supervisory authority, including the ability to correct his employer's discriminatory practices, such that he would properly be considered an "official" for Plaintiff's RA claim. See, e.g., Dudley v. Singleton, 508 F. Supp. 3d 1118, 1148 (N.D. Ala. 2020) (finding that the plaintiff failed to state an RA claim where she did "not aver[] that [the defendants, who were corrections officers,] sustained authority to correct the . . . Sheriff's Department's policies or exercised substantial supervisory authority such that their actions constituted official decisions by [the Sheriff] in his official capacity").

As to Sergeant Doe, the Complaint establishes that she had actual knowledge of the conduct at issue; in fact, she was a participant. Plaintiff's allegations also show that Sergeant Doe held *some* degree of supervisory authority, at least with respect to the CCADC corrections officers: Plaintiff claims that Sergeant Doe "was responsible for managing and supervising the facility and managing and supervising her subordinate corrections officers" by virtue of her rank as sergeant. [Doc. 1, p. 4]. These allegations, however, more closely

resemble "'naked assertion[s]' devoid of 'further factual enhancement'" than the well-pleaded facts necessary to state a claim. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557). Furthermore, Plaintiff does not allege that Sergeant Doe had authority to correct the discriminatory practices of the CCSO or that, because of the degree of her supervisory authority, her actions effectively "constitute[d] an official decision by the [CCSO] itself not to remedy the misconduct." Silberman, 927 F.3d at 1135 (quoting Doe, 604 F.3d at 1255). Lastly, the fact that Sergeant Doe holds the rank of "sergeant" is not enough, on its own, to show an "official" under the RA. Because "an official's role may vary from organization to organization," "[t]he question of how far up the chain of command one must look to find an 'official' is necessarily a fact-intensive inquiry . . . ." Liese, 701 F.3d at 350. And "[a]lthough the Liese inquiry is 'necessarily' 'fact-based,' that doesn't mean that the mere incantation of 'official'-ness entitles [Plaintiff] to discovery." Silberman, 927 F.3d at 1136 (11th Cir. 2019) (citation omitted) (quoting J.S., III by and through J.S. Jr. v. Hous. Cnty. Bd. of Educ., 877 F.3d 979, 987 (11th Cir. 2017)). In the absence of sufficient factual allegations about Sergeant Doe's level of supervisory authority, the Court cannot conclude that she qualifies as an "official" for the purposes of Plaintiff's RA

claim.[16]  Because Plaintiff did not establish that either C.O. Doe or Sergeant Doe meets the requirements of an "official," the Court need not determine whether their conduct constitutes intentional discrimination of the sort that is prohibited by the RA.

Plaintiff's Complaint does identify other parties who might be considered "officials."  Plaintiff alleges that Sheriff Warren "manages the Sheriff's Office, which includes the operation of the [CCADC]."  [Doc. 1, p. 4].  According to the Complaint, Prince, the Division Commander of the CCADC, "manages [its] day-to-day operations and executes its policies."  Id.  Similarly, Sanders, the Assistant Division Commander, "assisted in managing [the CCADC's] day-to-day operations and execut[ing] its policies."  Id.  Sheriff Warren, Prince and Sanders might qualify as "officials."  However, Plaintiff offers no facts showing that any of these individuals intentionally discriminated against her.

---

[16] Plaintiff argues that requiring her to name the individuals responsible for the alleged discrimination "conflat[es] the requirements concerning the identification of people who are parties to a lawsuit with the pleading standard[] as it relates to factual allegations." [Doc. 52, p. 12].  This is not true.  Whether Plaintiff's allegations are directed to named or unnamed parties, she must in either case plead sufficient facts to permit this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The Court cannot draw that inference based on the allegations in the Complaint.

With respect to Sheriff Warren, Plaintiff does not allege any facts establishing that the Sheriff intentionally discriminated against her or, more specifically, that he knew Plaintiff's federal rights were likely to be violated and chose not to act on that likelihood.  Indeed, Plaintiff's allegations suggest the opposite:  she claims that "[t]he Sheriff's Office has adopted guidelines and zero tolerance policies, pursuant to the Federal Prison Rape Elimination Act, with respect to certain individuals, including those who are transgender."  Id. at 21.  She contends that these policies were violated during the events at issue but sets forth no facts raising an inference that Sheriff Warren knew that such policy violations—assuming that they would amount to a violation of a federal right— were likely.  Further, according to the Complaint, the Sheriff was not implicated at all until September 7, 2018, when Plaintiff informed him of her claims via mail. See id. at 24.

As to Prince, Plaintiff alleges only that she attempted to contact Prince but "did not receive a response."  Id. at 20.  This fact alone does not evince discriminatory intent.  Regarding Sanders, Plaintiff claims that she communicated with him following her release, when Sanders informed her "that [Sergeant] Doe had advised him that [Plaintiff] told CCADC staff that she had male genitalia."  Id. at 21.  Plaintiff disputed ever making such a statement, and Sanders thus requested

documentation of Plaintiff's gender.  Id.  Asking for additional information pursuant to a civilian complaint does not arise to discriminatory intent; in fact, it suggests Sanders' intent to look into the matter further.

Plaintiff has not presented facts that allow this Court to draw the reasonable inference that Sergeant Doe or C.O. Doe possessed the requisite authority to act as "officials," nor has she shown that Sheriff Warren, Prince or Sanders intentionally discriminated against her.  Accordingly, Plaintiff failed to state a claim under the RA, and Defendants' Motion to Dismiss is **GRANTED**.

**CONCLUSION**

For the reasons stated herein, Plaintiff's Motion to Amend [Doc. 51] is **DENIED**.  Defendants' Motion to Dismiss [Doc. 49] is **GRANTED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 18th day of May, 2022.

J. P. BOULEE
United States District Judge